Paul Bartels (PB-1604)
Somer & Heller, LLP
5036 Jericho Turnpike, Suite 301
Commack, New York 11725
(631) 462-2323

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
VICTOR MARCHAND and VVN LOGISTICS INC.,

Plaintiffs,

-against-

FLEET ADVANTAGE GROUP, LLC, NPL CONSULTING SERVICES, INC. d/b/a THE ROUTE STORE, GTR TRANSPORT, INC., JVT LOGISTICS, LLC, TERRY LOGISTICS, INC., MATTHEW R. MATTERA, JOHN MATTERA, MICHAEL EISENBERG, SYLVAIN CHOUEN a/k/a FRANK CHOUEN, TARAS GROMYAK, JEFFREY STEINBERG and ABC CORP. d/b/a COBEX,

Defendants.
---------------------------------------------------------------X

**VERIFIED COMPLAINT**

***Jury Trial Demanded***

Plaintiffs VICTOR MARCHAND ("Marchand") and VVN LOGISTICS INC. ("VVN") (collectively "Plaintiffs"), by and through their attorneys SOMER & HELLER, LLP, respectfully allege, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Victor Marchand is a three time cancer survivor who has spent decades working in the trucking and distribution industries. Mr. Marchand used his business acumen to build a successful beverage distribution company which distributed Snapple and other beverages. The physical work involved with the distribution company

eventually took a toll on Mr. Marchand's body, requiring him to have two knee replacements.

2. Mr. Marchand thereafter decided to sell his distribution business to alleviate the stress on his body. Mr. Marchand sought the assistance of Defendant NPL Consulting Services, Inc. d/b/a The Route Store ("TRS"), a business broker, to sell his company. On July 10, 2018, Mr. Marchand sold his company to a third-party for a substantial sum of money. TRS representatives were present at the closing, and were aware that Mr. Marchand had received a substantial payment from the sale of his business.

3. Commencing on July 10, 2018, TRS, Terry Logistics, Inc. ("Terry") and their representatives commenced a campaign to induce Mr. Marchand to purchase an alleged "TurnKey Amazon Trucking Business" ("Amazon Business"). TRS' and Terry's representatives Matthew Mattera, John Mattera, Michael Eisenberg and Sylvain Chouen ("TRS Defendants") used their knowledge of Mr. Marchand's past medical history to fraudulently induce him to purchase the sham Amazon Business.

4. The TRS Defendants marketed the Amazon Business as a terrific opportunity for Mr. Marchand to own and operate a successful business, without performing physical labor. Specifically, the Amazon Business as described by the TRS Defendants, would be an independent, "turnkey" trucking company, which would perform long distance trucking distribution, known as line haul, for Amazon.

5. The TRS Defendants sent Mr. Marchand an abundance of literature which stated that he would have a "lifetime contract" with Amazon, which would remain effective so long as Mr. Marchand operated his business. Mr. Marchand was to be sold three (3) trucks, all documents required for the initiation of the business, pre-paid truck

insurance, training and fleet management. Most important to Mr. Marchand, TRS Defendants represented that he would not have to drive the trucks, so as to prevent further injury to his knees.

6. Mr. Marchand was at first hesitant to purchase the Amazon Business, as he had just sold his prior business, and did not want to rush into a new venture. The TRS Defendants, however, were relentless in their efforts to induce Mr. Marchand to purchase the Amazon Business. The TRS Defendants' efforts culminated with an email from Defendant Sylvain Chouen to Mr. Marchand on January 16, 2019, which stated that "you have a lifetime contract as long as you are performing."

7. Significantly, Mr. Chouen attached an Income Projection Statement to the January 16, 2019 email, which stated that the Amazon Business would earn Six Thousand and Forty Two ($6042) per week, net. After reviewing this projection and Mr. Chouen's representation that he would have a lifetime contract with Amazon, Mr. Marchand decided to move forward with the purchase of the business.

8. TRS presented Defendant Fleet Advantage Group LLC ("FA"), which is owned and operated by Defendant Taras Gromyak, as the Seller of the Amazon Business, and set a sale price of Seven Hundred and Twenty-Five Thousand Dollars ($725,000). On or about March 15, 2019, Mr. Marchand signed a contract for the purchase of the Amazon Business. Defendants JVT Logistics ("JVT") and Jeffrey Steinberg were designated as the escrow agents for the purchase, and signed the contract.

9. Upon payment of the initial installment, FA created Plaintiff VVN Logistics, Inc. ("VVN") to operate Mr. Marchand's Amazon Business. Mr. Marchand is the sole owner of VVN. By June 2019, VVN was operating trucks pursuant to a permit issued by Amazon. However, Amazon never executed a contract with VVN, and VVN

would later determine that Amazon never executes contracts with independent trucking companies for line haul. As such, TRS Defendants and FA defrauded Plaintiffs by misrepresenting that he was purchasing a business which would have a lifetime contract with Amazon. There was not and would never be a contract with Amazon, let alone a lifetime contract, and Defendants knew this when they sold him the Amazon Business.

10. In July 2019, Plaintiffs became concerned that VVN was losing money at a rapid pace, despite the operation of the trucks. Mr. Marchand tried to contact Defendants to address this monetary loss, but his concerns were brushed off. By the fall of 2019, VVN had lost tens of thousands of dollars, and was accruing significant debt. Plaintiffs hired consultants to try and make VVN profitable, however, to Mr. Marchand's dismay, the consultants all concluded that VVN would never be profitable. VVN's consultants determined that the Amazon Business was a sham, and the projection provided to Mr. Marchand was completely erroneous.

11. During this interim, FA was managing VVN's three trucks, and operating its own trucks under VVN's authority to collect revenue from Amazon. VVN did not approve of this questionable arrangement, and FA prevented VVN from obtaining information regarding same. Indeed, when VVN's consultants tried to obtain financial documents and information, FA demanded that VVN sign a legal release of all claims before cooperating. Appalled with FA's stonewalling, VVN had no choice but to cut its losses, shut down its operations, and sell the trucks.

12. In March 2020, Plaintiffs put VVN's three trucks up for sale, after accruing losses of nearly seventy-thousand dollars ($70,000).. The above Defendants collectively defrauded Mr. Marchand of his life savings, ruthlessly taking advantage of a cancer survivor, and father of four. The Defendants coordinated their efforts, as broker,

seller and escrow agent, to create the appearance of a legitimate business transaction. However, in reality, the Defendants operated a criminal enterprise, rife with under the table kickbacks and commissions which facilitated this illegal deal.

13. Mr. Marchand has survived cancer, and two knee surgeries through determination and grit. However, the knock-out blow to Mr. Marchand was the Defendants' coordinated effort to steal his life savings and destroy his livelihood. The Defendants' actions have destroyed Mr. Marchand's family, and have rendered him destitute. The Defendants defrauded Mr. Marchand with the knowledge that they were stealing his life savings and harming his family. For this despicable act, the Defendants must be held accountable.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1332. The FA Defendants, JVT and Jeffrey Steinberg have their principal places of business and are domiciled in New Jersey, while the remaining parties are located in New York, giving rise to diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. Plaintiffs have also asserted claims against Defendants pursuant to 18 U.S.C. § 1961-1968. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

15. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the TRS Defendants are located in Suffolk County, New York, which is located in the Eastern District of New York, and (2) a substantial portion of the events which give rise

to the Plaintiffs' claims took place in Suffolk County, which is located in the Eastern District of New York.

**PARTIES**

16. Plaintiff VICTOR MARCHAND was and still is a resident and domiciliary of Suffolk County, NY. Mr. Marchand is and was at all times the sole owner of Plaintiff VVN.

17. Plaintiff VVN LOGISTICS INC. ("VVN") was and still is a domestic corporation duly authorized and existing under the laws of the State of New York with its principal place of business located in the County of Suffolk, State of New York.

18. Defendant FLEET ADVANTAGE GROUP, LLC ("FA") is, upon information and belief, is a foreign corporation with its principal place of business located in Middlesex County, New Jersey.

19. Defendant NPL CONSULTING SERVICES, INC. d/b/a THE ROUTE STORE ("TRS") is, upon information and belief, a domestic corporation duly authorized and existing under the laws of the State of New York with its principal place of business located in the County of Suffolk, State of New York.

20. Defendant GTR TRANSPORT, INC. ("GTR") is, upon information and belief, a foreign corporation with its principal place of business located in Middlesex County, New Jersey.

21. Defendant JVT LOGISTICS INC. ("JVT") is, upon information and belief, a foreign corporation with its principal place of business located in Monmouth County, New Jersey.

22. Defendant TERRY LOGISTICS, INC. ("Terry") is, upon information and belief, a domestic corporation duly authorized and existing under the laws of the State of

New York, with its principal place of business located in the County of Suffolk, State of New York.

23. Defendant MATTHEW R. MATTERA is, upon information and belief, a resident and domiciliary of Suffolk County, NY. At all times hereinafter mentioned, Mr. Mattera was an officer and owner of TRS and Terry.

24. Defendant JOHN MATTERA is, upon information and belief, a resident and domiciliary of Suffolk County, NY. At all times hereinafter mentioned, Mr. Mattera was an officer and owner of TRS and Terry.

25. Defendant MICHAEL EISENBERG is, upon information and belief, a resident and domiciliary of Suffolk County, NY. At all times hereinafter mentioned, Mr. Eisenberg was an officer and owner of TRS and Terry.

26. Defendant SYLVAIN CHOUEN a/k/a FRANK CHOUEN is, upon information and belief, a resident and domiciliary of Suffolk County, NY. At all times hereinafter mentioned, Mr. Chouen was an officer and owner of TRS and Terry.

27. Defendant TARAS GROMYAK is, upon information and belief, a resident and domiciliary of Middlesex County, New Jersey. At all times hereinafter mentioned, Mr. Gromyak was an officer and owner of FA and GTR.

28. Defendant JEFFREY STEINBERG, is, upon information and belief, a resident and domiciliary of Monmouth County, New Jersey. At all times hereinafter mentioned, Mr. Steinberg was an officer and owner of JVT.

29. Defendant ABC Corp. d/b/a COBEX is and was, upon information and belief, a domestic corporation duly authorized and existing under the laws of the State of New York.

## FACTUAL ALLEGATIONS

### *The Purchase*

30. In July 2018, Mr. Marchand sold his prior beverage distribution business and used TRS as a business broker.

31. TRS Defendants were aware that Mr. Marchand was receiving a substantial sum of money from the sale of his business.

32. After Mr. Marchand sold his business, TRS Defendants approached Mr. Marchand about the opportunity to purchase an Amazon trucking business.

33. TRS Defendants told Mr. Marchand that the Amazon Business would include the purchase of the three trucks, all documents required to operate the business, a lifetime contract with Amazon for the performance of line haul services, training, and fleet management.

34. On January 16, 2019, Defendant Sylvain Chouen sent Mr. Marchand an email which stated that he was purchasing a lifetime contract with Amazon. Further, the email included an attached Excel spreadsheet which projected that the Amazon Business would earn $6042.00 a week in net profit.

35. Upon information and belief, the spreadsheet was created with input from all of the Defendants, in a well-coordinated effort to defraud Mr. Marchand.

36. From July 2018 until March 2019, TRS Defendants repeatedly contacted Mr. Marchand by text message, email and telephone for the purposes of convincing him to buy the Amazon Business.

37. On March 14, 2019, Mr. Marchand paid TRS a Seventy-Two Thousand and Five Hundred Dollar ($72,500) deposit for the purchase of the Amazon Business.

38. On March 15, 2019, Mr. Marchand, FA (by Defendant Gromyak) and JVT (by Defendant Steinberg) signed a contract (the "Contract") for the purchase of the Amazon Business.

39. The Contract was signed at a closing at Defendant GTR's place of business located at 41 Public Road, Monroe, New Jersey 08831.

40. The purchase price for the Amazon Business was Seven Hundred and Twenty-Five Thousand Dollars ($725,000.00).

41. The Contract provided that TRS was to receive a $72,500.00, from the sale.

42. The Contract provided that FA would be the Seller of the Amazon Business.

43. The Contract further provided that Two Hundred and Eighty Thousand Dollars ($280,000.00) was due at closing.

44. Mr. Marchand paid the sum of Two Hundred and Eighty Thousand Dollars ($280,000.00) to JVT at the closing.

45. The Contract required Mr. Marchand to pay the Seller, via JVT, Three Hundred and Seventy Two Thousand and Five Hundred Dollars ($372,500.00), by certified check, within twenty-one (21) days of closing.

46. Mr. Marchand paid JVT, by cashier checks, One Hundred and Fifty Thousand Dollars ($150,000.00) on or about April 10, 2019, Forty-Seven Thousand and Five Hundred Dollars ($47,500.00) on or about April 19, 2019, and One Hundred and Seventy Five Thousand Dollars ($175,000.00) on or about April 25, 2019.

47. The Contract provided that the Seller would provide Mr. Marchand with the following:

- 3 used trucks/sleepers
- 3 trucks registrations
- Startup New S Corp
- Payment of New Jersey Heavy Duty Highway Tax
- Coordination of required Department of Transportation documents
- Insurance for the 3 trucks – prepaid for one year
- Electronic Logging Devices
- Required permits for New Jersey, New York, Pennsylvania and other States
- Decals

48. Significantly, the Contract provided as follows:

> [t]he final payment of $367,500 payable to Seller held in Escrow will only be released when the Buyer receives the contract to operate from Amazon. The remaining $5,000 will be retained by JVT as payment from Seller for its services.

49. FA also agreed to provide training before, during and after closing, to provide the initial Amazon routes, and to provide a "100% turnkey business".

50. FA never provided Mr. Marchand with a contract between VVN and Amazon.

51. Despite FA's failure to provide Plaintiffs with a contract, JVT released the remainder of the monies to FA.

52. The trucks purchased by FA on behalf of VVN each had more than four hundred thousand (400,000) miles on them and were more than four (4) years

old, with a combined value of less than One Hundred and Twenty Thousand Dollars ($120,000.00).

53. Mr. Marchand did not receive the titles to all three trucks until October 2019.

54. Upon information and belief, Defendants Matthew R. Mattera, John Mattera, Michael Eisenberg and Sylvain Chouen a/k/a Frank Chouen ("Individual TRS Defendants") were the officers, shareholders and/or directors of TRS and Terry.

55. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants owned, operated, managed and/or controlled TRS and Terry.

56. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants were responsible for the daily operations, management and/or control of TRS and Terry.

57. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants made all business decisions on behalf of TRS and Terry, as well as approved all transfers of assets of the corporations.

58. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants exercised complete dominion and control over the operations and business of TRS and Terry.

59. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants were present and in control of TRS and Terry's places of business.

60. Upon information and belief, at all times hereinafter mentioned, TRS and Terry were undercapitalized.

61. Upon information and belief, at all times hereinafter mentioned, TRS and Terry failed to adhere to corporate formalities, including but not limited to holding regular and periodic meetings of the Board of Directors, holding annual Shareholder's Meetings, keeping minutes of any such meetings that were held, filing biennial statements, and following proper procedures required to dissolve a corporation under New York Business Corporation Law.

62. Upon information and belief, at all times hereinafter mentioned, TRS and Terry were and are corporations without assets, stripped of their assets by the Individual TRS Defendants.

63. Upon information and belief, the Individual TRS Defendants withdrew or converted all monies paid by Plaintiffs to TRS and Terry, for their own benefit in disregard of the corporate existence of TRS and Terry.

64. Upon information and belief, the Individual TRS Defendants conducted the business of TRS and Terry in disregard of their corporate formalities in a manner that suited their own convenience.

65. Upon information and belief, TRS and Terry primarily transacted business of the Individual TRS Defendants, rather than their own business, and acted as the alter egos of the Individual TRS Defendants.

66. Upon information and belief, the Individual TRS Defendants used their control of Terry and TRS to perpetrate a fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, and to induce Plaintiffs to pay the consideration thereunder.

67. Upon information and belief, at all times hereinafter mentioned, the Individual Defendants used their complete dominion and control over TRS and Terry to commit wrongful acts against Plaintiffs, causing injury to the Plaintiffs.

68. Upon information and belief, at all time hereinafter mentioned, the Individual TRS Defendants used TRS and Terry to pursue their own ends.

69. TRS and Terry were so dominated by the Individual TRS Defendants and their separate entity was so ignored, that TRS and Terry primarily transacted the business of the Individual TRS Defendants, instead of their own.

70. Upon information and belief, the officers of TRS and Terry, including the Individual TRS Defendants, did not operate TRS and Terry independently in their interest, but rather operated TRS and Terry in the Individual TRS Defendants interest, and at the Individual TRS Defendants' direction.

71. Upon information and belief, at all times hereinafter mentioned, the Individual TRS Defendants used TRS and Terry as a vehicle for perpetrating fraud or wrong against the Plaintiffs by inducing Plaintiffs to purchase the Amazon Business and to pay TRS and Terry monies.

72. Upon information and belief, TRS, Terry and the Individual TRS Defendants diverted the assets of TRS and Terry, for no consideration, knowing that same would render Defendants judgment proof or insolvent.

73. Upon information and belief, the Individual TRS Defendants diverted the corporate funds of TRS and Terry for their own personal purposes.

74. Upon information and belief, the Individual TRS Defendants commingled the funds of TRS and Terry with their personal funds.

75. Upon information and belief, the Individual Defendants knew or should have known that they owed a debt to Plaintiffs when they diverted the funds and assets to and from TRS and Terry.

76. By reason of the foregoing, TRS and Terry were and still are the alter ego and mere instrumentality of the Individual TRS Defendants.

77. By reason of the foregoing, TRS and Terry should be deemed the agents, instrumentalities or alter egos of the Individual TRS Defendants, the corporate veils of TRS and Terry should be pierced and the Individual TRS Defendants should be held liable for the acts, omissions, liabilities, and debts of TRS and Terry.

78. Upon information and belief, the Individual TRS Defendants, with the intent to deceive the Plaintiffs, acted in concert with TRS and Terry and fraudulently induced Plaintiffs to purchase the Amazon Business, which they knew to be a sham.

79. The Individual TRS Defendants, TRS and Terry acted in concert with and conspired with one another with the intent to perpetrate fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, and to induce Plaintiffs to pay the consideration therefore.

80. Upon information and belief, Defendant Taras Gromyak was the officer, shareholder and/or director of FA and GTR.

81. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak owned, operated, managed and/or controlled FA and GTR.

82. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak was responsible for the daily operations, management and/or control of FA and GTR.

83. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak made all business decisions on behalf of FA and GTR, as well as approved all transfers of assets of the corporations.

84. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak exercised complete dominion and control over the operations and business of FA and GTR.

85. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak was present and in control of FA and GTR's places of business.

86. Upon information and belief, at all times hereinafter mentioned, FA and GTR were undercapitalized.

87. Upon information and belief, at all times hereinafter mentioned, FA and GTR failed to adhere to corporate formalities, including but not limited to holding regular and periodic meetings of the Board of Directors, holding annual Shareholder's Meetings, keeping minutes of any such meetings that were held, filing biennial statements, and following proper procedures required to dissolve a corporation under relevant state laws.

88. Upon information and belief, at all times hereinafter mentioned, FA and GTR were and are corporations without assets, stripped of their assets by Taras Gromyak.

89. Upon information and belief, Taras Gromyak withdrew or converted all monies paid by Plaintiffs to FA and GTR for his own benefit in disregard of the corporate existence of FA and GTR.

90. Upon information and belief, Taras Gromyak conducted the business of FA and GTR in disregard of their corporate formalities in a manner that suited their own convenience.

91. Upon information and belief, FA and GTR primarily transacted the business of Taras Gromyak, rather than their own businesses, and acted as the alter egos of Taras Gromyak.

92. Upon information and belief, Taras Gromyak used his control of FA and GTR to perpetrate a fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, to induce Plaintiffs to pay the consideration thereunder, and to convert Plaintiffs' assets.

93. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak used his complete dominion and control over FA and GTR to commit wrongful acts against Plaintiffs, causing injury to the Plaintiffs.

94. Upon information and belief, at all time hereinafter mentioned, Taras Gromyak used FA and GTR to pursue their own ends.

95. FA and GTR were so dominated by Taras Gromyak and their separate entities were so ignored, that FA and GTR primarily transacted the business of Taras Gromyak instead of their own.

96. Upon information and belief, the officers of FA and GTR, including Taras Gromyak, did not operate FA and GTR independently in their interest, but

rather operated FA and GTR in Taras Gromyak's interest, and at Taras Gromyak's direction.

97. Upon information and belief, at all times hereinafter mentioned, Taras Gromyak used FA and GTR as a vehicle for perpetrating fraud or wrong against the Plaintiffs by inducing Plaintiffs to purchase the Amazon Business and to pay FA and GTR monies.

98. Upon information and belief, FA, GTR and Taras Gromyak diverted the assets of FA and GTR, for no consideration, knowing that same would render Defendants judgment proof or insolvent.

99. Upon information and belief, Taras Gromyak diverted the corporate funds of FA and GTR for his own personal purposes.

100. Upon information and belief, Taras Gromyak commingled the funds of FA and GTR with his personal funds.

101. Upon information and belief, Taras Gromyak knew or should have known that he owed a debt to Plaintiffs when he diverted the funds and assets to and from FA and GTR.

102. By reason of the foregoing, FA and GTR were and still are the alter ego and mere instrumentality of Taras Gromyak.

103. By reason of the foregoing, FA and GTR should be deemed the agents, instrumentalities or alter egos of Taras Gromyak, the corporate veils of FA and GTR should be pierced and Taras Gromyak should be held liable for the acts, omissions, liabilities, and debts of FA and GTR.

104. Upon information and belief, Taras Gromyak, with the intent to deceive the Plaintiffs, acted in concert with FA and GTR, and fraudulently induced Plaintiffs to purchase the Amazon Business, which they knew to be a sham.

105. Taras Gromyak, FA and GTR acted in concert with and conspired with one another with the intent to perpetrate fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, to induce Plaintiffs to pay the consideration therefore, and to convert Plaintiffs' assets.

106. Upon information and belief, Defendant Jeffrey Steinberg was the officer, shareholder and/or director of JVT.

107. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg owned, operated, managed and/or controlled JVT.

108. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg was responsible for the daily operations, management and/or control of JVT.

109. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg made all business decisions on behalf of JVT, as well as approved all transfers of assets of the corporation.

110. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg exercised complete dominion and control over the operations and business of JVT.

111. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg was present and in control of JVT's place of business.

112. Upon information and belief, at all times hereinafter mentioned, JVT was undercapitalized.

113. Upon information and belief, at all times hereinafter mentioned, JVT failed to adhere to corporate formalities, including but not limited to holding regular and periodic meetings of the Board of Directors, holding annual Shareholder's Meetings, keeping minutes of any such meetings that were held, filing biennial statements, and following proper procedures required to dissolve a corporation under New York Business Corporation Law.

114. Upon information and belief, at all times hereinafter mentioned, JVT was a corporation without assets, stripped of its assets by Jeffrey Steinberg.

115. Upon information and belief, Jeffrey Steinberg withdrew or converted all monies paid by Plaintiffs to JVT for his own benefit in disregard of the corporate existence of JVT.

116. Upon information and belief, Jeffrey Steinberg conducted the business of JVT in disregard of its corporate formalities in a manner that suited his own convenience.

117. Upon information and belief, JVT primarily transacted the business of Jeffrey Steinberg, rather than its own business, and acted as the alter ego of Jeffrey Steinberg.

118. Upon information and belief, Jeffrey Steinberg used his control of JVT to perpetrate a fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, to induce Plaintiffs to pay the consideration thereunder, and to convert Plaintiffs' assets.

119. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg used his complete dominion and control over JVT to commit wrongful acts against Plaintiffs, causing injury to the Plaintiffs.

120. Upon information and belief, at all time hereinafter mentioned, Jeffrey Steinberg used JVT to pursue his own ends.

121. JVT was so dominated by Jeffrey Steinberg and its separate entities were so ignored, that JVT primarily transacted the business of Jeffrey Steinberg instead of its own. JVT independently in its interest, but rather operated JVT in Jeffrey Steinberg's interest, and at Jeffrey Steinberg's direction.

122. Upon information and belief, at all times hereinafter mentioned, Jeffrey Steinberg used JVT as a vehicle for perpetrating fraud or wrong against the Plaintiffs by inducing Plaintiffs to purchase the Amazon Business and to pay JVT monies.

123. Upon information and belief, JVT and Jeffrey Steinberg diverted the assets of JVT, for no consideration, knowing that same would render Defendants judgment proof or insolvent.

124. Upon information and belief, Jeffrey Steinberg diverted the corporate funds of JVT for his own personal purposes.

125. Upon information and belief, Jeffrey Steinberg commingled the funds of JVT with his personal funds.

126. Upon information and belief, Jeffrey Steinberg knew or should have known that he owed a debt to Plaintiffs when he diverted the funds and assets to and from JVT.

127. By reason of the foregoing, JVT was and still is the alter ego and mere instrumentality of Jeffrey Steinberg.

128. By reason of the foregoing, JVT should be deemed the agent, instrumentality or alter ego of Jeffrey Steinberg, the corporate veil of JVT should

be pierced, and Jeffrey Steinberg should be held liable for the acts, omissions, liabilities, and debts of JVT.

129. Upon information and belief, Jeffrey Steinberg, with the intent to deceive the Plaintiffs, acted in concert with JVT, and fraudulently induced Plaintiffs to purchase the Amazon Business, which they knew to be a sham.

130. Jeffrey Steinberg and JVT acted in concert with and conspired with one another with the intent to perpetrate fraud on Plaintiffs, to induce Plaintiffs to purchase the Amazon Business, to induce Plaintiffs to pay the consideration therefore, and to convert Plaintiffs' assets, as more fully set forth below.

**VVN's Operations**

131. VVN began to operate Amazon line haul routes in June 2019.

132. Plaintiffs coordinated with the TRS Defendants, FA, Gromyak and GTR to start up VVN's operations, typically in writing.

133. FA and GTR managed and operated VVN's trucks from June 2019 to February 2020.

134. Between June 2019 and March 2020, VVN sustained more than Seventy Thousand Dollars ($70,000.00) in operating losses, and accrued significant debt.

135. VVN underwent extraordinary efforts in an attempt to turn a profit. Mr. Marchand personally spoke with FA, GTR and Defendant Gromyak on numerous occasions to troubleshoot the issues.

136. Plaintiffs hired two consultants who analyzed the fundamentals of VVN in an attempt to stop the accruing losses.

137. Plaintiffs' consultants sought information and documents from FA, GTR and Defendant Gromyak, and were told that information would only be released if Plaintiffs signed legal waivers.

138. On October 21, 2019, Mr. Marchand and VVN's consultant went to FA and GTR's site in Monroe, New Jersey to discuss strategies to make VVN profitable.

139. Rather than provide Mr. Marchand and his consultant with information, FA, GTR and Mr. Gromyak tried to pressure Plaintiffs to sign a legal release and waiver of all claims before providing any assistance.

140. On September 17, 2019, Plaintiffs' counsel sent a letter to the Defendants, which outlined the above fraud, and demanded the refund of the purchase price, plus One Hundred Thousand Dollars ($100,000.00) in monetary damages. The Defendants either failed to respond to the letter, or refused to return the purchase price.

141. On November 25, 2019, FA, GTR and Defendant Gromyak's attorney sent a letter to Plaintiffs' counsel which stated that FA had not received a final escrow payment in the amount of One Hundred Fifty-One Thousand and Three Hundred Dollars ($151,300.00), despite Mr. Marchand's payment to JVT of the full purchase price. The letter requested that Plaintiffs "approve and facilitate that payment immediately."

142. During this interim, Plaintiffs became aware that, upon information and belief, the Defendants agreed in writing for TRS and TRS Defendants to keep the $151,300 balance of the purchase price, in addition to the $72,500 commission.

143. As a result of the above agreement, TRS Defendants' actual commission was Two Hundred Twenty-Three Thousand Eight Hundred Dollars ($223,800.00), or 31% of the total purchase price.

144. VVN operated at a financial loss every month from June 2019, its first month of operation, to March 2020, its final month of operation.

145. The income projection provided by the Defendants predicted a net income of at least Twenty-Four Thousand Dollars ($24,000.00) per month. Notably, this projection did not include truck insurance, which accrues at a rate of at least Seven Thousand Dollars ($7,000) per month.

146. During this interim, FA and GTR operated their own trucks for Amazon line haul out of the same location where FA was operating VVN's trucks. Without Plaintiffs' authority, FA and GTR used VVN's trucks to boost their own ratings and profit with Amazon, to the determent of the Plaintiffs.

147. Upon information and belief, GTR and FA used VVN's trucks to maximize their own profits, by stealing the more desirable Amazon routes which were supposed to be dedicated to VVN, and relegating the less desirable routes to VVN.

148. FA and GTR used VVN's trucks for their own financial advantage, which caused VVN to suffer significant financial losses.

149. The Amazon Business was sold to Mr. Marchand as a "100% TurnKey Business" which was capable of being independently operated. However, after VVN suffered significant losses and began to look for an alternate management company, Plaintiffs were advised that a three truck fleet could not operate independently. Indeed, FA's counsel confirmed as much to Plaintiffs'

counsel, and stated that a three truck fleet would not be able to coordinate enough drivers to properly staff the trucks for interstate travel.

150. Accordingly, the Defendants admittedly sold Mr. Marchand a business which was fundamentally flawed and unable to be operated independently of FA. FA was the only operation with the ability to staff VVN's trucks, and in the fall of 2019, tried to charge Plaintiffs a management fee of 8% for this service.

151. Therefore, Mr. Marchand was sold a business which was financially and structurally dependent upon FA for its operation, and clearly not Turn-Key, as advertised and provided for in the Contract.

152. Despite FA's management of the fleet, VVN was losing money in every month of its operation. Therefore, even with FA staffing VVN's trucks and running dispatch, VVN was losing money, rendering VVN's independent operation impossible.

153. Upon information and belief the Defendants told Mr. Marchand that he would have a lifetime contract with Amazon despite their knowledge that Amazon would soon be phasing out independent line haul routes.

154. In February 2020, Mr. Marchand shut down VVN's operations due to a lack of funds. VVN was unable to make payroll and pay the other costs for its operations, including, fuel, EZ Pass, insurance, taxes and maintenance.

155. In March 2020, VVN liquidated its assets and put all three trucks up for sale.

156. As a result of the above, Mr. Marchand has no ability to earn a living, and has been deprived of his life savings. He has suffered severe emotional distress, has separated from his wife, and has been forced to move out of his house.

157. Mr. Marchand is seeking Eighteen Million Dollars ($18,000,000) in compensatory and liquidated damages from the Defendants.

**AS AND FOR A FIRST CAUSE OF ACTION**

*(New York Common Law Fraud against all Defendants)*

158. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "157" with the same force and effect as though more fully set forth at length herein.

159. The Defendants by their agents, employees and representatives, made several representations of material fact to Mr. Marchand which were false.

160. TRS Defendants, acting on behalf of all of the Defendants, represented to Mr. Marchand verbally, commencing on July 10, 2018, that he would be purchasing a lifetime contract with Amazon.

161. TRS Defendants, acting on behalf of all of the Defendants, sent numerous emails to Mr. Marchand to induce him to purchase the Amazon Business.

162. On January 16, 2019, Defendant Chouen sent an email to Mr. Marchand which stated that "you have a lifetime contract as long as you are performing."

163. Defendant Chouen's email also stated that "this is a turnkey operation…the business is yours and can be moved where ever you would like."

164. Mr. Chouen further stated that there was a customer who bought 7 trucks, added 9 trucks, and was doing well.

165. Mr. Chouen also attached an income projection spreadsheet to his email, which projected a weekly net income of "$6042."

166. The projection appeared to show a breakdown of all expenses for the business.

167. The projection, however, grossly lacked or underestimated several expenses, such as fuel and truck insurance.

168. The projection grossly overestimated projected revenue and profit, resulting in an unrealistic net income projection.

169. Upon information and belief, the above representations as contained in the January 16, 2019 email were prepared by TRS Defendants, FA, GTR, Terry and Gromyak, on behalf of and at the direction of all of the Defendants, all of whom conspired to induce Mr. Marchand to purchase the Amazon Business.

170. Contrary to Defendants' representations, Mr. Marchand was not purchasing a lifetime contract with Amazon.

171. Amazon never executed lifetime contracts with its independent line haul contractors.

172. VVN was not a turnkey business, as it was dependent upon FA to staff its trucks, and even then it was unprofitable.

173. The income projection was completely incorrect, fabricated, unrealistic, and Defendants knew as much when the projection was sent to Plaintiffs and Mr. Marchand's son.

174. Plaintiffs lost money every month that VVN's trucks were operating.

175. Upon information and belief, there was no prior buyer who had purchased 7 trucks, and who had subsequently purchased 9 additional trucks.

176. Defendants knew the above representations to be false because, upon information and belief, they had purchased an Amazon Business themselves from FA prior to Mr. Marchand's purchase.

177. Upon information and belief, the Defendants were unable to operate their own Amazon Business for a profit, and also were forced to liquidate their trucks.

178. The Defendants, therefore, were aware that there was no contract with Amazon, that the business was not profitable, and that the business was not turnkey, because they owned an identical business which was failing at the time they were inducing Mr. Marchand to buy his Amazon Business.

179. The Defendants intended to deceive Mr. Marchand for the purposes of inducing him to purchase the Amazon Business.

180. In addition to the January 16, 2019 email and in person meetings, the Defendants repeatedly texted Mr. Marchand in an effort to persuade him to purchase the Amazon Business.

181. Defendant Michael Eisenberg texted Mr. Marchand on February 11, 2019, March 12, 2019, March 13, 2019 and March 14, 2019 to pressure Mr. Marchand to close the deal.

182. Defendant Sylvain Choen texted with Mr. Marchand on October 19, 2018, November 21, 2018, January 15, 2019, January 22, 2019, January 23, 2019, February 11, 2019, February 12, 2019, March 7, 2019, March 11, 2019, and March 12, 2019 to pressure Mr. Marchand to purchase the Amazon Business.

183. Defendants John Mattera and Matthew Mattera called and met with Mr. Marchand to pressure him to close the deal. During these meetings,

Defendants directly referenced the income projection as a reason for Mr. Marchand to purchase the Amazon Business. Defendants also repeatedly told Mr. Marchand that he would be receiving a "lifetime contract" with Amazon, that the business was turnkey, and that other customers had purchased similar businesses.

184. Defendants made the above false representations during their repeated discussions and correspondence with Mr. Marchand in which they were pressuring him to purchase the Amazon Business.

185. The Defendants' false representations were intended to deceive Mr. Marchand into thinking that the Amazon Business would be profitable and was a sound investment.

186. The Defendants' false representations were intended to deceive Mr. Marchand so that he would pay them $725,000 for the Amazon Business, including their large commission.

187. Mr. Marchand reviewed the written materials, including PowerPoint Presentations and Excel Spreadsheets which were sent to him via email, and relied on same for the purchase of the Amazon Business.

188. Mr. Marchand had used TRS Defendants to sell his prior business and therefore developed some level of trust with them. Therefore, his reliance on their representations was justified.

189. Mr. Marchand directly relied on the Defendants' false representations when he decided to purchase the Amazon Business.

190. The projection spreadsheet looked like a legitimate breakdown of revenue and expenses, and contained many requisite costs for a trucking business.

191. Based on the appearance and content of the income projection, Mr. Marchand was justified in relying on the projection.

192. Mr. Marchand would not have purchased the Amazon business if the Defendants had not represented that the net monthly income would be $6042 per week.

193. Mr. Marchand would not have purchased the Amazon business if the Defendants had not represented that he was purchasing a lifetime contract, or any contract, with Amazon.

194. Mr. Marchand would not have purchased the Amazon business if the Defendants had not represented that the Amazon business was a turnkey business which would be operated independently from the Seller.

195. Mr. Marchand would not have purchased the Amazon business if the Defendants had not represented that prior customers had purchased similar routes and had successfully grown same.

196. Mr. Marchand suffered significant financial losses as the result of his reliance on the Defendant's false representations.

197. Mr. Marchand lost the vast majority of his initial business investment of $725,000.

198. Mr. Marchand expected to receive Three Hundred Thousand Dollars ($300,000) per year in net income from the Amazon Business. However, from June 2019 to March 2020, Mr. Marchand sustained Seventy Thousand Dollars ($70,000) in losses.

199. Mr. Marchand purchased the Amazon Business as his retirement plan, and planned to expand the business as it became more profitable. As such, he planned to operate the business for at least twenty (20) years.

200. As a result of Mr. Marchand's reliance on the Defendants' false representations, he sustained $70,000 in monetary losses, suffered the loss of the majority of the $725,000 purchase price, and lost $6 million in future profits.

201. By reason of the foregoing fraud by Defendants, Plaintiffs have been damaged in a sum of Six Million Six Hundred and Seventy Thousand Dollars ($6,670,000), plus interest, attorney's fees and expenses.

**AS AND FOR A SECOND CAUSE OF ACTION**

*(New York Common Law Breach of Contract against Fleet Advantage Group)*

202. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "201" with the same force and effect as though more fully set forth at length herein.

203. On March 15, 2019, Mr. Marchand and FA signed the Contract for Mr. Marchand's purchase of an Amazon Business.

204. The Contract required FA to procure and provide Mr. Marchand and his Amazon Business with a contract with Amazon which guaranteed Mr. Marchand's and VVN consistent work with Amazon.

205. The Contract required FA to provide Mr. Marchand with a turn-key, portable business.

206. FA failed to provide Mr. Marchand and his Amazon Business with a contract with Amazon which guaranteed VVN work from Amazon.

207. FA instead only provided Mr. Marchand and VVN with a permit to operate from Amazon, without any guarantee of future work.

208. FA did not provide Mr. Marchand with a portable turn-key business.

209. FA provided Mr. Marchand with an unprofitable business which could never operate without assistance from and reliance on FA.

210. VVN is incapable of being operated, even at a loss, without the resources provided by FA, which would cost VVN 8% of its gross revenue.

211. The Contract required Mr. Marchand to pay JVT $725,000 on account of the purchase price for the Amazon Business.

212. On March 14, 2019, Mr. Marchand paid TRS a $72,500 deposit for the purchase of the Amazon Business.

213. Mr. Marchand paid JVT, by cashier checks, One Hundred and Fifty Thousand Dollars ($150,000) on or about April 10, 2019, Forty-Seven Thousand and Five Hundred Dollars ($47,500) on or about April 19, 2019, and One Hundred and Seventy Five Thousand Dollars ($175,000) on or about April 25, 2019.

214. Mr. Marchand paid the entire purchase price for the Amazon Business.

215. On April 19, 2019, Mr. Marchand signed an authorization for JVT in which Mr. Marchand agreed "to the release of the escrow for the purchase of the Amazon Trucking Business from Fleet Advantage Group LLC, in the amount of $372,500."

216. By way of his full payment of the purchase and authorization for the release of funds from JVT to FA, Mr. Marchand and VVN fully performed their obligations as set forth in the Contract.

217. FA's breach of the Contract and failure to procure and provide Plaintiffs with a contract with Amazon caused VVN to be unprofitable.

218. FA's breach of the Contract and failure to procure and provide Plaintiffs with a contract with Amazon caused VVN's valuation to drop to the resale value of the three used trucks.

219. Without the contract with Amazon, VVN is simply a company with three old trucks, resulting in Mr. Marchand spending $725,000 for a company with no real value.

220. FA's breach of the Contract by failing to provide Mr. Marchand with a portable turn-key business resulted in VVN's inability to separate from FA, inhibited VVN's ability to be profitable, and rendered the company worthless.

221. By reason of the foregoing breach of contract by Defendants, Plaintiffs have been damaged in a sum of $6,670,000, plus interest, attorney's fees and expenses.

## AS AND FOR A THIRD CAUSE OF ACTION

*(Damages Pursuant to the RICO Act, 18 U.S.C. § 1961-1968, against all Defendants)*

222. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "221" with the same force and effect as though more fully set forth at length herein.

223. The Contract and all transactions which are the subject of this Complaint affect interstate commerce in that the Amazon Business's only service is line haul trucking across the United States. Line haul involves trucks, carrying an assortment of consumer goods and products, crossing over state lines on a daily basis.

224. The within transactions themselves involved interstate commerce, as much of the activity transpired between the States of New York and New Jersey.

225. FA, which is based in New Jersey, sent emails to Mr. Marchand regarding the purchase from FA's general email address fleetdocs@outlook.com on May 2, 2019, May 20, 2019, September 26, 2019, October 18, 2019, October 24, 2019, October 29, 2019, November 7, 2019, November 11, 2019, November 14, 2019, November 21, 2019, November 29, 2019 and additional emails until the cessation of VVN's operations in March 2020.

226. GTR, also based in New Jersey, sent emails from its email address gtrdocs@outlook.com, to Mr. Marchand regarding the purchase on May 2, 2019, May 3, 2019, May 6, 2019, May 7, 2019, May 14, 2019, July 5, 2019, July 8, 2019, July 11, 2019, July 26, 2019, August 1, 2019, August 6, 2019, August 20, 2019, August 22, 2019, August 29, 2019, September 5, 2019, September 12, 2019, September 19, 2019 and additional emails until the cessation of VVN's operations in March 2020.

227. The Defendants, individually and collectively, emailed, texted and called Plaintiffs for the purposes of maintaining and coordinating their fraudulent scheme.

228. The Defendants conducted and participated in their fraudulent enterprise through a pattern of racketeering.

229. The Defendants' racketeering activities included wire fraud pursuant to 18 U.S.C. § 1343.

230. The Defendants' engaged in wire fraud by sending Mr. Marchand emails and text messages in furtherance of their fraudulent scheme.

231. In addition to the emails referenced in paragraphs 146 and 147 of this Complaint, Defendants sent Mr. Marchand texts and emails for the specific purpose of inducing him to purchase the Amazon Business.

232. On January 16, 2019, Defendant Chouen, an officer of TRS and Terry, sent an email to Mr. Marchand and his son which, as set forth above, stated that the Amazon Business: (1) was a portable, turn-key business; (2) would include a lifetime contract with Amazon; (3) projected a net income of $6042.00 per week; and (4) was previously purchased by other buyers, who made significant money.

233. The statements made in Defendant Chouen's January 16, 2019 email were made for the direct and sole purpose of fraudulently inducing Mr. Marchand to buy the Amazon Business.

234. On October 19, 2018, November 21, 2018, January 15, 2019, January 22, 2019, January 23, 2019, February 11, 2019, March 7, 2019, March 11, 2019 and March 12, 2019 Defendant Chouen, an officer of TRS and Terry, texted with Mr. Marchand in furtherance of his efforts to fraudulently induce him to purchase the Amazon Business.

235. On February 11, 2019, March 12, 2019, March 13, 2019 and March 14, 2019, Defendant Eisenberg, an officer of TRS and Terry, texted with Mr.

Marchand in furtherance of his efforts to induce him to purchase the Amazon Business.

236. Defendant Eisenberg's March 13, 2019 text message directed Mr. Marchand to prepare a bank check for $72,500 to TRS, a bank check to JVT Logistics for $280,000, and provided the details of the closing.

237. Defendant Eisenberg's March 14, 2019 text message directed Mr. Marchand to prepare a bank check for $280,000 to FA and not JVT, and further confirmed the details of the closing.

238. Defendant Chouen further texted Mr. Marchand on March 19, 2019 and April 5, 2019 to effectuate the deal.

239. Defendant Eisenberg further texted Mr. Marchand on March 16, 2019, March 17, 2019, March 21, 2019, March 27, 2019, March 28, 2019, March 29, 2019, March 30, 2019, March 31, 2019, April 2, 2019, April 6, 2019, April 7, 2019, April 10, 2019, April 11, 2019, April 19, 2019, April 25, 2019, April 29, 2019, July 9, 2019, July 10, 2019 and July 24, 2019 for the purposes of pressuring Mr. Marchand to pay the balance of the purchase price and to effectuate the deal.

240. Upon information and belief, all Defendants coordinated with Defendants Eisenberg, Chouen, TRS, Terry, GTR and FA to prepare and send the above referenced emails and text messages, including the fraudulent income projection.

241. Upon information and belief, the above referenced wire fraud was executed at the direct authorization, operation and control of all of the Defendants, who utilized Defendants Eisenberg, Chouen, TRS, Terry, GTR and FA as their contacts with Mr. Marchand.

242. By way of the foregoing, the Defendants engaged in racketeering activities in furtherance of their fraudulent scheme, warranting the award of treble damages and attorneys' fees pursuant to the RICO Act.

243. By reason of the foregoing fraud and RICO violations by Defendants, Plaintiffs are entitled to treble damages in the amount of Twenty-Million and Ten Thousand Dollars ($20,010,000.00), plus interest, attorney's fees and expenses.

## AS AND FOR A FOURTH CAUSE OF ACTION

*(New York Common Law Breach of Fiduciary Duty Against JVT)*

244. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "243" with the same force and effect as though more fully set forth at length herein.

245. On or about March 15, 2019, JVT, Mr. Marchand and FA signed the Contract.

246. The Contract was signed by Taras Gromyak on behalf of FA, Jeffrey Steinberg on behalf of JVT, and by Mr. Marchand.

247. The Contract appointed and designated JVT as escrow agent for the purchase of the Amazon business.

248. The Contract, which served as the escrow agreement, provides that "the final payment of $367,500 payable to Seller held in Escrow will only be released when the Buyer receives the contract to operate from Amazon. The remaining $5000 will be retained by JVT for its services."

249. The Contract further provides that "JVT may rely upon a written representation from Seller that such Agreement has in fact been entered into without any independent verification."

250. Upon information and belief, FA did not provide JVT with any written representation that VVN had executed a contract with Amazon.

251. JVT released a substantial portion of the final payment without any written representation from FA.

252. JVT breached the Contract when it released a substantial portion of the final payment without any written representation from FA regarding an Amazon contract.

253. JVT breached its fiduciary duty to Plaintiffs when it breached the Contract, and released a substantial portion of the final payment without any written representation from FA.

254. JVT failed to release the funds in strict compliance with the Contract.

255. In releasing the funds, JVT failed to protect the rights of Mr. Marchand, as bargained for in the Contract.

256. Upon information and belief, JVT failed to remit the entirety of the final payment to FA, and retained a substantial sum, in excess of $100,000, well beyond the $5000 provided for in the Contract.

257. JVT released the final payment sums despite VVN's lack of a contract with Amazon, in furtherance of the Defendants' fraudulent scheme.

258. JVT acted on behalf of all Defendants when it released the monies.

259. Upon information and belief, all Defendants received a kickback from the final payment amount after JVT released same.

260. JVT enabled, aided, and abetted Defendants in their scheme to defraud Mr. Marchand and VVN by intentionally, wantonly, and recklessly disregarding its fiduciary duties to Plaintiffs.

261. JVT's release of the final payment was the most important step of the Defendants' scheme, as the monies from the final payment were the Defendants' shared monetary profit from the scheme.

262. Without JVT's release of the funds, the Defendants would not have retained the final purchase price, and finalized the fraud against Plaintiffs.

263. JVT's breach of its fiduciary duty damaged Plaintiffs by releasing the final payment when Plaintiffs had not received a Contract with Amazon.

264. Plaintiffs would not have paid an additional $367,500 but for JVT's payment of said funds to the Defendants.

265. Plaintiffs paid $367,500 for nothing, as Amazon never executed a contract with VVN, as required for the release of the funds.

266. By reason of the foregoing breach of fiduciary duty by Defendant JVT, Plaintiffs are entitled to damages in the amount of $6,670,000, plus interest, attorney's fees and expenses.

**AS AND FOR A FIFTH CAUSE OF ACTION**

*(Breach of New York General Business Law § 349 against all Defendants)*

267. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "266" with the same force and effect as though more fully set forth at length herein.

268. As set forth above, the Defendants engaged in a coordinated scheme to defraud Mr. Marchand into purchasing the Amazon Business.

269. The Defendants' actions as aforesaid constitute deceptive practices pursuant to New York General Business Obligations Law § 349.

270. By reason of the foregoing breach of New General Business Law § 349, by all Defendants, Plaintiffs are entitled to treble damages in the amount of Twenty-Million and Ten Thousand Dollars ($20,010,000.00), plus interest, attorney's fees and expenses.

**<u>AS AND FOR A SIXTH CAUSE OF ACTION</u>**

*(Breach of New York General Business Law § 350 against Terry, TRS, TRS Defendants)*

271. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "270" with the same force and effect as though more fully set forth at length herein.

272. Defendants Terry, TRS and the TRS Defendants falsely advertised the Amazon Business as set forth above.

273. Defendants Terry, TRS and TRS Defendants falsely advertised to Mr. Marchand that he was purchasing a contract with Amazon, a turn-key business, and that a reasonable income projection for the business was $6042 per week, net.

274. The aforesaid Defendants' actions constitute false advertising in breach of New York General Business Law § 350.

275. By reason of the foregoing false advertising and breach of New York General Business Law § 350, by Terry, TRS and TRS Defendants, Plaintiffs

are entitled to damages in the amount of $6,670,000, plus interest, attorney's fees and expenses.

## AS AND FOR A SEVENTH CAUSE OF ACTION

*(New York Common Law Conversion Against FA and GTR)*

276. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "275" with the same force and effect as though more fully set forth at length herein.

277. FA operated and managed VVN's trucks from June 2019 to February 2020.

278. FA's management included the booking, coordination, and staffing of Amazon line haul routes for VVN's trucks.

279. From June 2019 to February 2020, FA operated Amazon line haul routes for its own trucks out of the same location where it managed VVN's trucks.

280. From June 2019 to February 2020, GTR operated Amazon line haul routes for its own trucks out of the same location where it managed VVN's trucks.

281. From June 2019 to February 2020, VVN was assigned different routes and trips by Amazon on a daily basis.

282. VVN had rights and interests in the Amazon routes, as provided for in the Sales Contract.

283. VVN received payments from Amazon in exchange for VVN's transportation of goods for Amazon.

284. VVN had the right to receive and possess the revenue from the routes and trips.

285. VVN had an interest in the revenue from the Amazon routes.

286. During this interim, FA and GTR operated a scheme to steal VVN's designated routes, and operate VVN's trucks for the benefit of FA and GTR.

287. FA and GTR stole the routes designated for VVN and operated same for profit.

288. These routes were assigned from Amazon to VVN.

289. VVN did not authorize FA and GTR to utilize its routes.

290. As a result of FA and GTR's theft of VVN's routes, VVN sustained lost revenue in excess of $100,000.

291. FA and GTR managed the finances of VVN.

292. FA and GTR had access to VVN's checking accounts and credit cards.

293. VVN had a possessory right to all of the revenue from Amazon, less any operational expenses.

294. FA and GTR fabricated certain charges and expenses for the operation of VVN, and directed monies for these fake expenses to themselves.

295. FA and GTR thereby misappropriated and converted funds belonging to VVN to themselves.

296. Plaintiffs did not authorize FA and GTR to take the converted funds.

297. FA and GTR utilized a third party administrator to fabricate and disguise fake charges, same which were debited from VVN's bank accounts and charged to its credit cards.

298. FA and GTR created false business records to conceal their theft of VVN's routes and monies.

299. FA and GTR converted in excess of $100,000 of VVN's monies.

300. FA and GTR are still in possession of Plaintiffs' monies.

301. By reason of the foregoing conversion, Plaintiffs are entitled to damages in an amount to be determined at trial, no less than $100,000.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**

*(New York Common Law Constructive Fraud Against all Defendants)*

302. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "301" with the same force and effect as though more fully set forth at length herein.

303. Defendants' actions as aforesaid constitute constructive fraud.

304. Defendants represented to Plaintiffs that: (1) Plaintiffs would have a contract with Amazon; (2) the Amazon Business would be a portable, turnkey business; (3) $6042 per week was a reasonable projection for net income; (4) that a buyer had previously purchased seven trucks, and operated same profitably; and (5) the balance of the final payment would only be released after VVN received a contract with Amazon.

305. All of the Defendants' representations in paragraph 227 were false.

306. The above representations pertained to material facts pertinent to Mr. Marchand's purchase of the Amazon Business.

307. The Defendants made the above representations to induce Mr. Marchand to purchase the Amazon Business.

308. The Defendants intended for Mr. Marchand to rely on the false representations.

309. Mr. Marchand did rely on the Defendants' false representations when he made the decision to purchase the Amazon Business.

310. Mr. Marchand would not have purchased the Amazon Business absent the above false representations.

311. Mr. Marchand did not have knowledge that the Defendants' representations were false before he purchased the Amazon Business.

312. JVT had a fiduciary relationship with Mr. Marchand as escrow agent.

313. Upon information and belief, JVT is an affiliate and/or subsidiary of Terry, TRS, FA, GTR and Cobex.

314. Upon information and belief, JVT is owned, operated, controlled and managed by Terry, TRS, TRS Defendants, FA, Taras Gromyak, GTR and Cobex.

315. All Defendants used JVT's fiduciary relationship with Mr. Marchand in furtherance of their fraudulent scheme.

316. As a result of the Defendants' constructive fraud, Mr. Marchand was damaged in the sum of $6,670,00.00.

**<u>AS AND FOR A NINTH CAUSE OF ACTION</u>**

*(New York Common Law Unjust Enrichment Against all Defendants)*

317. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "316" with the same force and effect as though more fully set forth at length herein.

318. Mr. Marchand paid TRS, FA and JVT $725,000 for the Amazon Business.

319. TRS, FA and JVT were collectively enriched by Mr. Marchand's $725,000.00 payment.

320. Upon information and belief, TRS, FA and JVT distributed the $725,000 purchase price among all of the Defendants herein.

321. The Contract provided that the Amazon Business would have a contract with Amazon.

322. The Contract provided that the final payment would not be released by JVT until VVN received a contract with Amazon.

323. VVN never received a contract with Amazon.

324. TRS, FA and JVT all failed to abide by their obligations as set forth in the Contract.

325. The Defendants committed fraud against Mr. Marchand as described aforesaid.

326. The Defendants' fraud and breach of contract renders it against equity and good conscience to permit them to retain the $725,000.00 purchase price.

327. By way of the foregoing, the Defendants were unjustly enriched in the sum of $725,000.00.

**AS AND FOR A TENTH CAUSE OF ACTION**

*(Aiding and Abetting Fraud Against the Individual Defendants)*

328. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "327" with the same force and effect as though more fully set forth at length herein.

329. At set forth above, the within Defendants perpetrated a fraudulent scheme upon the Plaintiffs.

330. Individual Defendants Matthew R. Mattera, John Mattera, Michael Eisenberg, Sylvain Chouen a/k/a Frank Chouen, Taras Gromyak, and Jeffrey Steinberg (collectively "Individual Defendants") were aware of this fraud.

331. As set forth herein, the Individual Defendants each provided substantial assistance in the achievement of the fraud, as pled above.

332. As a result of the Individuals Defendants aiding and abetting of the fraud, Plaintiffs were damaged in the sum of $20,010,000.00, plus the attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiffs demands judgment against Defendants, as follows:

a) on the First Cause of Action against Defendants, judgment in the sum of $6,670,000.00;

b) on the Second Cause of Action against Defendants, judgment in the sum of $6,670,000.00;

c) on the Third Cause of Action against Defendants, judgment in the sum of $20,010,00.00, plus the attorneys' fees and costs of this action;

d) on the Fourth Cause of Action against Defendants, judgment in the sum of $6,670,000.00;

e) on the Fifth Cause of Action against Defendants, judgment in the sum of $20,010,000.00, plus the attorneys' fees, and costs of this action;

f) on the Sixth Cause of Action against Defendants, judgment in the sum of $6,670,000.00; and

g) on the Seventh Cause of Action against Defendants, judgment in an amount to be determined a trial, but no less than $100,000.00,

h) on the Eighth Cause of Action against Defendants, judgment in an amount to be determined at trial, but no less than $6,670,000.00;

i) on the Ninth Cause of Action against Defendants, judgment in the sum of $725,000.00;

j) on the Tenth Cause of Action against Defendants, judgment in the sum of $20,010,00.00, plus the attorneys' fees and costs of this action; and

k) for such other, further and different relief as this Court deems just and proper.

Dated: Commack, New York
May 19, 2020

PAUL A. BARTELS, ESQ.
SOMER & HELLER, LLP
*Attorneys for Plaintiffs*
5036 Jericho Turnpike, Ste. 301
Commack, New York 11725
631-462-2323

**VERIFICATION**

STATE OF NEW YORK)
:S.S.
COUNTY OF SUFFOLK)

VICTOR M. MARCHAND, being duly sworn, deposes and says:

I am the President of the Plaintiff VVN Logistics Inc., in the within action; I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, I believe it to be true.

Victor M. Marchand

VICTOR M. MARCHAND

Sworn to before me this
24 day of ~~March~~ April 2020

Grace Moser
Notary Public

GRACE MOSER
Notary Public, State of New York
No. 01MO4619370
Qualified in Queens County
Commission Expires 1-31-2022